```
                    UNITED STATES BANKRUPTCY COURT
                    FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )   Chapter 7
ROGER A. STEIL                  )
JACALYN K. STEIL                )   Bankruptcy No. 05-02079
                                )
     Debtors.                   )
_____)
ALI A. HERZ                     )
                                )   Adversary No. 05-9108
     Plaintiff,                 )
                                )
vs.                             )
                                )
ROGER A. STEIL                  )
JACALYN K. STEIL                )
                                )
     Defendants.                )
```

### ORDER RE: COMPLAINT OBJECTING TO DISCHARGE OF DEBT

This matter came before the undersigned on July 11, 2006 for trial. Attorney Henry Nathanson represented Plaintiff Ali Herz. Attorney Reta Noblett-Feld and student interns Adam Freed and Hisham Kassim represented Debtors/Defendants Roger and Jacalyn Steil. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiff seeks to except debt from discharge under § 523(a)(6) based on Debtors' conversion of his collateral, inventory in a convenience store leased by Debtors. Debtors deny the disposition of the collateral was willful or malicious.

### FINDINGS OF FACT

Debtors Roger and Jacalyn Steil entered into a Lease and a Bill of Sale and Security Agreement with Plaintiff Ali Herz on May 25, 2001. A handwritten "Property Lease Contract," Plaintiff's Exhibit 1, also sets out terms and conditions for the lease of the business property. Through this transaction, Debtors leased property from Plaintiff to run a convenience store business. The Lease covers the business premises at 1455 Mt.

Vernon Rd. SE, Cedar Rapids, Iowa.  Debtors were to pay Plaintiff $1,000 per month under the Lease, starting May 25, 2001 for a term of two years.  The Bill of Sale and Security Agreement relates to personal property at the business, specifically "inventory."  It provides for total payment of $12,000, with monthly payments of $500 starting September 1, 2001.  Debtors granted Plaintiff a security interest in the inventory "and in any proceeds, products, increase, and issue thereof and any accessions, attachments, accessories, parts, additions and repairs thereto."  Plaintiff's Exhibit 2.

   Plaintiff purchased the property in October 2000.  He testified that he had to bring the building up to code to be able to lease it.  He purchased shelves and display counters and stocked merchandise.  Plaintiff testified that, altogether, he spent $12,000 to get the premises ready to be a convenience store.  This is the amount set out in the Bill of Sale with Debtors.

   Debtors dispute the value of the inventory in the store when they purchased it.  They testified that Plaintiff did not give them a list of his purchases until after they signed the Bill of Sale.  Defendants' Exhibit F shows a total of $7,470 spent by Plaintiff with Farner-Bocken Co. for merchandise for the store.  Debtors also note that a burglary occurred prior to the time they took possession wherein approximately $2,000 of merchandise was stolen.  Debtors assert the inventory in the store was worth approximately $6,000 when they took possession on May 25, 2001.

   While they ran the business, Debtors purchased an additional $19,000 of inventory and added shelving, coolers and a freezer.  They expanded their product lines and added additional services in order to become more profitable.  At the same time, they did not pay their personal bills, attempting to put everything they had into the business.

   Between May 25 and September 1, 2001, Debtors paid Plaintiff $66 per day in cash.  Half of this was rent under the lease and the other half was to pay down a separate start-up loan of $500 and to pay toward the $12,000 Bill of Sale.  Debtors estimate that they paid Plaintiff a total of $2,524 during this time.

   Debtors vacated the property on September 9, 2001.  The only things remaining in the building after they left were a large cooler and a wooden counter.  Debtors had sold out the inventory in the last few days of business, and sold some coolers, shelving and display cases to a private dealer for $1,000.  They did not turn over any of the final proceeds to Plaintiff.  Instead,

Debtors testified they paid other vendors.  Ms. Steil testified that they wanted to keep good credit with the vendors, hoping someday they would get back into doing something similar.

Plaintiff testified he did not know Debtors were planning to close the business.  He was out of the country from August 18 to October 10, 2001 because of a death in the family in Lebanon.  While he was gone, he spoke to his wife and to Debtors by phone.  Debtors paid Mrs. Herz daily payments, until the first of September.  Mrs. Herz called Plaintiff in Lebanon in early September, concerned that Debtors looked like they were closing the business.

Plaintiff and Debtors spoke by telephone during this time.  Plaintiff testified that Debtors told him Mrs. Herz was overreacting and they were not planning to leave the business.  Debtors, however, testified that they told Plaintiff more than once that they could not make a profit in the business because of their overhead, including a $2,500 electric bill for July which Debtors received in August.  They stated that they told Plaintiff before they moved that they were done and could not run the business anymore.  Both Debtors testified that Plaintiff would not listen to them and told them they needed to give it more time.

On November 25, 2001, Plaintiff visited Debtors at their home to discuss what they owed him.  At Plaintiff's request, Ms. Steil hand-wrote an agreement which all three parties signed.  Plaintiff's Exhibit 4.  The agreement states Debtors owe Plaintiff $15,000 and sets out monthly payments of $200, to be paid in full by March 2007.  It further states:

> This agreement is binding by its signer and cancels all leases and contracts made prior to today [sic] agreement.  This agreement is not to be included in any Bankruptcy Discharge.

Id.  Debtors did not make any payments under this agreement.

## CONCLUSIONS OF LAW

Section § 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

. . .

3

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).  In order to except a debt from discharge under § 523(a)(6), the plaintiff must establish by a preponderance of the evidence that the debt arises from an injury which is both willful and malicious.  Grogan v. Garner, 498 U.S. 279, 291 (1991); In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999); In re Logue, 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003).  The term "willful" means deliberate or intentional.  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).  The injury, and not merely the act leading to the injury, must be deliberate or intentional.  Id. at 61-62.

Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm.  Scarborough, 171 F.3d at 641.  The standard of proof of malice does not require spite, ill will, or personal animosity.  In re Fors, 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001).

> Knowledge that legal rights are being violated is insufficient to establish malice, absent some additional aggravated circumstances.  Proof of malice requires proof of a "heightened level of culpability . . . going beyond recklessness and beyond intentional violation of a security interest."  Plaintiff must establish that the conduct precipitating the damage was targeted at the creditor.

In re Heister, 290 B.R. 665, 674-75 (Bankr. N.D. Iowa 2003) (citing In re Long, 774 F.2d 875, 882 (8th Cir. 1985)).

In the context of the breach of a security agreement, a willful breach is not enough to establish malice.  Logue, 294 B.R. at 63.

> Debtors who willfully break security agreements are testing the outer bounds of their right to a fresh start, but unless they act with malice by intending or fully expecting to harm the economic interests of the creditor, such a breach of contract does not, in and of itself, preclude a discharge.

Long, 774 F.2d at 882.

In Long, the court accepted the debtor's explanation that he diverted funds in a misguided belief that he could save his

4

company and found that the debtor's actions were not malicious under § 523(a)(6). 774 F.2d at 882. In <u>In re Foushee</u>, 283 B.R. 278, 285 (Bankr. N.D. Iowa 2002), the court found a lack of maliciousness where the debtor testified that he used the proceeds of the sale of collateral to pay child support, pay bills and purchase diesel fuel. In <u>Heister</u>, the court noted that withholding payment from one creditor to pay another or pay living expenses, or using funds to allow the debtor to remain in business or to protect his financial interests was not malicious. 290 B.R. at 675. Other explanations have been accepted to find the use of proceeds of collateral was not malicious, including where such proceeds were garnished for child support, <u>In re Mulder</u>, 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004); or the debtor believed he would be able to keep his business operating, <u>In re Tinkler</u>, 311 B.R. 869, 881 (Bankr. D. Colo. 2004). Courts are more likely to find conversion of collateral malicious if the debtor made attempts to conceal the disposition of the collateral from the creditor, placed proceeds in a separate account or covered up a scheme. <u>See</u> <u>In re Foust</u>, 52 F.3d 766, 769 (8th Cir. 1995); In <u>re Jackson</u>, 203 B.R. 146, 147 (Bankr. E.D. Ark. 1996).

### CONTRACT LAW

For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy. <u>In re Baumhaft</u>, 271 B.R. 517, 521 (Bankr. E.D. Mich. 2001). The Code is very specific that the only manner in which a debtor can waive the discharge of a specific debt is through the use of reaffirmation agreements. <u>In re Rul-Lan</u>, 186 B.R. 938, 943 (Bankr. W.D. Mo. 1995); 11 U.S.C. § 524(c). Purported prepetition waivers of discharge are void, offending the policy of promoting a fresh start for individual debtors. <u>In re Kroen</u>, 280 B.R. 347, 351 (Bankr. D.N.J. 2002).

Under Iowa law, "when a portion of an agreement is deemed invalid, the remaining portions of the agreement can be enforced as long as they can be separated from the illegality." <u>Miller v. Marshall County</u>, 641 N.W.2d 742, 752 (Iowa 2002). The illegality of a provision in a contract does not vitiate the entire contract. <u>Sisters of Mercy v. Lightner</u>, 274 N.W. 86, 95 (Iowa 1937).

Debtors and Plaintiff entered into an agreement on November 25, 2001 in which the previous agreements were cancelled and Debtors agreed to the amount of their debt to Plaintiff. The U.S. Supreme Court has stated that this type of settlement agreement and release may work a kind of novation. <u>Archer v. Warner</u>, 538 U.S. 314, 323 (2003). But, that fact does not bar a

showing that the settlement debt arose out of conduct which makes the debt nondischargeable under § 523(a).  _Id._ (considering fraud under § 523(a)(2)(A)).

**ANALYSIS**

As to the November 25, 2001 agreement, the parties appear to agree that the language which purports to except the debt from discharge is void and not enforceable.  The fact that the parties entered into this agreement does not bar the Court from looking beyond the settlement to determine whether Debtors' conduct makes the debt nondischargeable under § 523(a)(6).  Much of the testimony presented related to the amount of inventory and equipment which was in the store prior to Debtors' operation of the business.  Rather than enter into a detailed analysis of this testimony, the Court will instead address the issues of dischargeability of debt for "willful and malicious injury" under § 523(a)(6).

Debtors testified that when they discontinued the convenience store business they knew their agreements required them to turn over proceeds to Plaintiff.  This satisfies the requirement of "willfulness" in that they deliberately breached the Lease and Sale agreements.  Thus, Plaintiff must next prove by a preponderance of the evidence that this willful breach was malicious.

Both Debtors testified that Plaintiff would not accept their plans to discontinue the business, but instead encouraged them to give it more time.  Though Plaintiff and Ms. Herz testified Debtors did not notify them they were closing the store, the Court finds Debtors' version more credible.  Debtors' explanation that they paid proceeds from the close-out to vendors in order to maintain good credit with them is acceptable.  Despite Plaintiff's assertions to the contrary, the Court does not believe Debtors attempted to conceal their discontinuation of the business.  Rather, it appears that Debtors expressed their need to get out of the business and, with Plaintiff refusing to accept it, they went ahead without his permission.

A few months after the business closed, Debtors entered into the November 2001 agreement with Plaintiff, acknowledging a debt which was higher than the original amount in the Bill of Sale.  They did not seek bankruptcy relief until 2005.  These facts undermine Plaintiff's assertion that Debtors' conduct was malicious, or targeted at injuring him.

Based on the foregoing, the Court finds that Plaintiff has failed to prove that Debtors committed a malicious injury as required by § 523(a)(6). Therefore, the debt to Plaintiff is not excepted from discharge.

**WHEREFORE**, Plaintiff's Complaint Objecting to Discharge of Debt is DENIED.

**FURTHER**, Plaintiff has failed to prove all the elements under § 523(a)(6) to except the debt from discharge.

DATED AND ENTERED: August 14, 2006

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE